10-3375-cv
Miles v. City of Hartford

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of October, two thousand eleven.

PRESENT:

        JOHN M. WALKER, JR.,
        JOSEPH M. McLAUGHLIN,
        DEBRA ANN LIVINGSTON,
                *Circuit Judges*.

---

VALERIE MILES,
        *Petitioner-Appellant*,

    -v.-                             No. 10-3375-cv

CITY OF HARTFORD,
CHERYL GOGINS,
ROBERT RUSSELL,
JAMES BERNIER,
        *Respondents-Appellees*.

---

        LEON ROSENBLATT, Law Offices of Leon Rosenblatt, West Hartford, Connecticut, for *Petitioner-Appellant.*

        LORI MIZERAK, Assistant Corporation Counsel, Hartford, Connecticut, for *Respondents-Appellees.*

Appeal from the United States District Court for the District of Connecticut (Kravitz, *Judge*).

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment entered on July 23, 2010 is AFFIRMED.

Petitioner Valerie Miles appeals from the grant of partial summary judgment pursuant to Fed. R. Civ. P. 56. Miles contends principally that the District Court erred in its application of Connecticut law to her claims.

## I.    BACKGROUND

Miles was employed by the Connecticut Department of Children and Families ("DCF"). On May 27, 2005, she went to a residence in Hartford to remove four children. While Miles was present, Defendants Cheryl Gogins and Robert Russell, both police officers with the Hartford police department, took the children's mother and uncle into custody. Miles contends that she observed the police discover three small plastic bags, one of which contained a white substance. The defendants deny that such bags were found.

After the arrest of the mother and uncle, Miles prepared affidavits for DCF's use asserting that the officers had found the three bags. In early June 2005, Defendant Lieutenant Bernier, Officer Gogins's supervisor, initiated an investigation as a result of the discrepancy in the reports of Miles and the officers. Miles was arrested on July 28, 2005, on charges of fabricating evidence and witness tampering, the latter in connection with a visit by Miles to the home of the children's aunt who was present at the residence when the children were removed.

2

Miles appeared before Judge Wendy Susco in her criminal case in January 2006, and her application for accelerated rehabilitation ("AR") pursuant to Conn. Gen. Stat. § 54-56e was granted.[1] The Connecticut court granted Miles's application for AR over the prosecution's objection and ordered Miles to perform fifty hours of community service over a period of one year of probation.

Miles subsequently commenced the instant litigation against the City of Hartford and the officers allegedly involved in the series of events culminating in her arrest and prosecution.[2] She charged that Bernier submitted "false and misleading statements," Amended Complaint ¶ 14, prepared by the defendants, which resulted in the issuance of the warrant for her arrest. The District Court granted summary judgment on the six claims she presses on appeal, as well as her claim for false light (which Miles does not appeal). Miles's claim for intentional infliction of emotional distress survived summary judgment and proceeded to trial, where the jury returned a verdict for the defendants. We presume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal and revisit those topics below only as necessary to facilitate this discussion.

## II.    DISCUSSION

We review a district court's grant of summary judgment *de novo*, with "[a]ll evidence submitted on the motion . . . construed in the manner most favorable to the nonmoving party."

---

[1] AR is a Connecticut program for persons accused of non-serious crimes who have never been convicted of a crime and who affirm that they have not participated in the AR program previously. Conn. Gen. Stat. § 54-56e(a)-(b). As a result of admission into and successful completion of AR, a "defendant may apply for dismissal of the charges against such defendant[,] and the court, on finding . . . satisfactory completion, shall dismiss such charges." *Id.* § 54-56e(f).

[2] Miles withdrew all her malicious prosecution, false arrest, and abuse of process claims against the City of Hartford at oral argument in the court below. *Miles v. City of Hartford*, 719 F. Supp. 2d 207, 209 (D. Conn. 2010).

*Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The moving party is entitled to summary judgment where "the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)) (internal quotation marks omitted). We may affirm on any ground supported by the record. *See Beal v. Stern*, 184 F.3d 117, 122 (2d Cir. 1999).

On appeal Miles contends that the District Court erred in granting summary judgment on her claims for malicious prosecution, false arrest, and abuse of process, each of which she brought pursuant to Connecticut common law and 42 U.S.C. § 1983. Because in each instance the federal tort and the Connecticut common law tort are substantially identical, *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (malicious prosecution and false arrest); *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (abuse of process), we need examine only the elements of the Connecticut common law torts.

A. Malicious Prosecution

At Connecticut common law,

[a]n action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

4

*McHale v. W.B.S. Corp.*, 446 A.2d 815, 817 (Conn. 1982). Miles argues that the District Court erred in concluding that, because AR does not constitute a favorable termination under Connecticut law, summary judgment as to her malicious prosecution claims was appropriate.

We agree with the District Court. In *Roesch v. Otarola*, 980 F.2d 850 (2d Cir. 1992), the Court explicitly held that "a dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a termination in favor of the accused for purposes of a civil rights suit." *Id.* at 853. "[T]his court is bound by a decision of a prior panel unless and until its rationale is overruled . . . ." *In re Sokolowski*, 205 F.3d 532, 534-35 (2d Cir. 2000) (per curiam) (quoting *United States v. Allah*, 130 F.3d 33, 38 (2d Cir. 1997)) (internal quotation marks omitted). Miles argues that two cases decided subsequent to *Roesch*, one state and one federal, indicate that, despite *Roesch*, her admission to the AR program constitutes favorable termination. For the following reasons, we disagree.

The first case to which Miles points is *AFSCME, Council 4, Local 1565 v. Dep't of Correction*, 6 A.3d 1142 (Conn. 2010). In *AFSCME*, the Connecticut Supreme Court vacated an arbitration award that relied on an application for and grant of AR as evidence of guilt for purposes of a just cause determination in the employment context. *Id.* at 1144-46. The Court gave as its reason the fact that the "award violated a clear and significant public policy, which is that acceptance of [AR] is not evidence of guilt, that it cannot be used as evidence of guilt, and that, indeed, acceptance of [AR] has no probative value on the issue of guilt or innocence of the charged offense." *Id.* at 1145. Miles argues that *AFSCME* indicates that, despite her request to participate in AR, she has retained her presumption of innocence, and that therefore it was incorrect for the

District Court to hold that she did not meet the favorable termination requirement of the tort of malicious prosecution.

*AFSCME*, however, does not address whether AR can constitute favorable termination for purposes of malicious prosecution claims. Nor did we premise our holding in *Roesch* on an inference of guilt based on participation in AR. In fact, we noted that AR-like programs "leave[] open the question of the accused's guilt." *Roesch*, 980 F.2d at 852 (quoting *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)) (internal quotation marks omitted). We also observed that "should [the Court] consider such a program to be a favorable disposition . . . , the program would be less desirable for the prosecutor because the issue of guilt or innocence would still have to be litigated in the civil context." *Id.* Both of these factors still obtain, despite *AFSCME*. Thus, the approaches of *Roesch* and *AFSCME* to AR are compatible, and the latter does not undermine the continuing viability of the former.

The second post-*Roesch* case to which Miles points is *Posr v. Court Officer Shield No. 207*, 180 F.3d 409 (2d Cir. 1999). In *Posr*, we held that a speedy trial dismissal can constitute favorable termination under New York law. *Id.* at 417-18. We distinguished *Singleton*, in which we had indicated that participation in New York's "adjournment in contemplation of dismissal" program—similar to Connecticut's AR program—did not constitute favorable dismissal. *Id.* We rested the distinction in part on the fact that "[t]he prosecution in *Singleton* was terminated by [a procedure involving] . . . 'the consent of both the prosecution and the accused,'" *id.* at 417 (quoting *Singleton*, 632 F.2d at 193), while the speedy trial dismissal "did not require the consent of the government," *id.* Miles argues that, because her application for AR was granted over the objection of the government, it too should constitute favorable termination.

6

This argument is without merit. In *Roesch* we explicitly noted that the fact that Connecticut's AR program does not require the consent of both the prosecutor and the accused for a defendant to participate does not distinguish it from New York's "adjournment in contemplation of dismissal" and is not "material to the availability of a section 1983 suit." *Roesch*, 980 F.2d at 853. *Posr* does not undercut this conclusion, nor suggest that Miles's criminal proceeding resulted in a favorable termination. The District Court did not err in granting summary judgment as to Miles's malicious prosecution claims.

## B. False Arrest

The Connecticut common law tort of false arrest "is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 440 A.2d 973, 974 (Conn. 1982). In *Roesch*, 980 F.2d at 853-54, this Court expressly held, invoking Connecticut law, that favorable termination is an element of "a section 1983 claim sounding in false imprisonment or false arrest." Miles relies on *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996), to argue to the contrary. But *Weyant* addressed false arrest under New York law, not Connecticut law. *Id.* at 853. And its observation that Connecticut law is less settled than New York law on this point in no way erodes the authority of *Roesch*, which is binding on this panel. *In re Sokolowski*, 205 F.3d at 534-35. The District Court thus did not err in granting summary judgment as to Miles's false arrest claims.

## C. Abuse of Process

Next, we address Miles's abuse of process claims. We assume *arguendo* that the filing of documents to obtain Miles's arrest warrant constituted the initiation of judicial process. *See*

*Larobina v. McDonald*, 876 A.2d 522, 530 (Conn. 2005) ("[A]lthough the definition of process may be broad enough to cover a wide range of judicial procedures, to prevail on an abuse of process claim, the plaintiff must establish that the defendant used a *judicial process . . . .*").  It is undisputed that an abuse of process claim may only be based on events *subsequent to* initiation.  *See, e.g.*, *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 773 A.2d 906, 919 n.16 (Conn. 2001) ("The distinction between malicious prosecution or vexatious suit and abuse of process . . . is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process . . . .") (quoting *Shaeffer v. O.K. Tool Co.*, 148 A. 330, 332 (Conn. 1930)).  Even assuming that defendants Gogins and Russell participated in the filing of this documentation, the District Court did not err in granting summary judgment as to Miles's claims against them, as Miles adduced no facts in support of their continued involvement in her prosecution subsequent to the filing.

We also conclude that summary judgment was properly granted as to Bernier, who arrested Miles after the arrest warrant issued.[3]  Connecticut case law indicates that, "[T]o prevail on an abuse of process claim, the plaintiff must establish that the defendant used a judicial process for an improper purpose." *Larobina*, 876 A.2d at 530 (emphasis removed).  Use of a judicial process for an improper purpose occurs when a party uses that process for something for which it was not designed.  *See Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, L.P.*, 802 A.2d 44, 50 (Conn. 2002).  Such improper purpose must be the primary, rather than the incidental, reason the tortfeasor engages in the process in question.  *See Mozzochi v. Beck*, 529 A.2d 171, 173 (Conn.

---

[3] We assume *arguendo* that Miles's arrest constitutes an event subsequent to the initiation of judicial process for purposes of Connecticut law.

1987); *see also Cadle Co. v. D'Addario*, Nos. 31174, 31674, 32066, 2011 WL 3802776, at *6 (Conn. App. Ct. Sept. 6, 2011).

Miles failed to raise a genuine issue of material fact as to Bernier's purpose in bringing the allegedly abusive process against her. Even assuming that Miles's evidence, construed most favorably to her, would allow a jury to find that Bernier's investigation was deficient in some respects, she provided no evidence to show that his primary reason for proceeding against her was improper. *See Suffield*, 802 A.2d at 50 (indicating that abuse of process only occurs when a party uses judicial process for something for which it is not designed). She thus failed to provide a basis upon which a reasonable jury could find a necessary element of the tort of abuse of process. *See Omnicom*, 597 F.3d at 509 (indicating that summary judgment is appropriate where "the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of a claim on which the plaintiff bears the burden of proof) (internal quotation marks omitted).

D. Motion for Certification

Finally, with regard to Miles's motion for certification, we decline to certify the questions she has identified. As to her first and second questions, *Roesch* is controlling, and we have found no basis upon which to conclude that certification is appropriate. *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 211-12 (2d Cir. 2006) (Sotomayor, J.) (declining to certify, despite absence of controlling authority on point from a state high court, when our precedent and state lower court decisions allowed us to determine a state's law). The certification of Miles's third question is unnecessary. Even assuming that, under Connecticut law, obtaining a warrant constitutes initiation

9

of judicial process, and that a later arrest constitutes a subsequent event for the purpose of an abuse of process claim, the District Court committed no error in granting summary judgment as to the abuse of process claims.

To the extent Miles raises other arguments with respect to the judgment below, we have considered them and reject them as meritless.

Accordingly, for the foregoing reasons, Miles's motion for certification is DENIED and the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk